**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

BETTY JANE ROBERTS HAGAN,

                Plaintiff,

vs.                                             Case No. 3:08-cv-1246-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Betty Jane Roberts Hagan ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits. Her alleged inability to work is based on degenerative disc disease of the lumbar spine, arthritis of the back, bilateral carpal tunnel syndrome, obesity, diabetes, hypertension, "leg problems," low back pain, and anxiety. See Transcript of Administrative Proceedings (Doc. No. 15; "Tr.") at 16, 20, 39, 41, 43. On November 4, 2004, Plaintiff filed an application for disability insurance benefits, alleging an onset date of September 27, 2004. Tr. at 15-16. An Administrative Law Judge ("ALJ") held a hearing on July 11, 2006, Tr. at 295-318, and issued a Decision on September 20, 2006, finding Plaintiff not disabled through the date of the Decision. Tr. at 12-21. On October 22, 2008, the Appeals Council denied Plaintiff's request for review. Tr. at 4-6. On December 29, 2008, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) seeking review of the

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, see Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 16), and the Order of Reference was entered on March 26, 2009 (Doc. No. 18).

Commissioner's final decision. Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

Plaintiff frames one issue for the Court to consider: whether "[t]he ALJ erred by not finding Plaintiff credible and then compounding that error by finding she could perform her past relevant work[.]" Plaintiff's Memorandum of Law in Opposition to the Commissioner's Decision Denying Plaintiff Disability Insurance Benefits (Doc. No. 20; "Pl.'s Mem.") at 2 (emphasis and capitalization omitted). In her memorandum, however, there are actually two broad issues raised: (1) whether the ALJ erred in discrediting Plaintiff's subjective testimony as to her pain; and (2) whether the ALJ erred in determining Plaintiff's ability to work. See id. at 2-9. More specifically, the second issue questions whether the ALJ erred in determining Plaintiff can perform past relevant work ("PRW") and whether the ALJ erred in not consulting a vocational expert ("VE") to determine the type of work Plaintiff could perform. For the reasons explained herein, the undersigned concludes the ALJ did not err in discrediting Plaintiff's subjective pain testimony and did not err in determining Plaintiff is capable of performing PRW. Because he determined that Plaintiff is capable of performing PRW, the ALJ was not required to consult a VE. Therefore, the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled, an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the plaintiff: (1) is currently employed; (2) has a severe impairment; (3) has an impairment that meets or medically equals one listed in the Regulations; (4) can perform PRW; and (5) retains the ability to perform any work in the national economy. See

20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The ALJ performed the required five-step sequential inquiry. At step one, the ALJ established Plaintiff has not engaged in substantial gainful activity since September 27, 2004 (the alleged onset date). Tr. at 20. At step two, the ALJ found Plaintiff suffers from the following severe impairments: "degenerative disc disease of the lumbar spine, carpal tunnel syndrome and obesity." Tr. at 16, 20. At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 16, 20. The ALJ determined Plaintiff has the residual functional capacity ("RFC") for light work. Tr. at 19. Plaintiff can lift or carry ten pounds but cannot perform duties requiring repetitive maneuvers with the upper extremities. Tr. at 19. At step four, the ALJ determined that Plaintiff is capable of performing her PRW as a "custodian/maid" because "[a]ccording to the claimant's description of these jobs they entailed lifting no greater than 10 pounds and did not require repetitious maneuvers with her arms," which the ALJ found is consistent with his RFC determination that Plaintiff can perform light work. Tr. at 19. The ALJ did not proceed to step five. See Tr. at 19-20. The ALJ ultimately concluded that Plaintiff has not been under a disability from the alleged onset date through the date of the decision, and he denied Plaintiff's claim. Tr. at 20-21.

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320,

1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV. Discussion

The two issues before the Court are (1) whether the ALJ erred in discrediting Plaintiff's subjective testimony as to her pain; and (2) whether the ALJ erred in determining Plaintiff's ability to work. See Pl.'s Mem. at 2-9. In resolving the second issue, the Court must evaulate whether the ALJ erred in determining Plaintiff can perform her PRW, and whether the ALJ erred in not consulting a VE to determine the type of work Plaintiff can perform. The issues will be addressed in turn.

#### A. Plaintiff's Pain Testimony

Plaintiff contends the ALJ erroneously discredited Plaintiff's subjective testimony regarding her pain and symptoms. See Pl.'s Mem. at 2. "In order to establish a disability

-4-

based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing the following: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). A claimant's subjective testimony corroborated by objective medical evidence is "sufficient to support a finding of disability." Holt, 921 F.3d at 1223. Although "credibility determinations are the province of the ALJ," Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005), "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony. Wilson, 284 F.3d at 1225; see also Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence"). "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)); see also 20 C.F.R. § 416.929(c)(3)(i)-(vi) (providing the same).

Under the test applied in Wilson, Plaintiff meets the first part. The record contains evidence of underlying medical conditions, namely degenerative disc disease of the lumbar spine, bilateral carpal tunnel syndrome, and obesity. See Tr. at 99, 233, 267. As to the

second part of the Wilson test, notwithstanding the lack of objective evidence in the record confirming the severity of Plaintiff's alleged pain, Plaintiff's objectively determined medical condition can reasonably be expected to give rise to her alleged pain. The ALJ, however, found Plaintiff's testimony regarding her pain and symptoms "less than fully credible because her allegations [were] excessive and not fully supported by the evidence of record." Tr. at 19. A review of the record reveals the ALJ considered the five factors discussed in Davis when evaluating Plaintiff's subjective testimony and throughout his Decision. See Davis, 287 F. App'x at 760. In addition, the ALJ's reasons for discrediting Plaintiff's subjective testimony are supported by substantial evidence in the record. See Wilson, 284 F.3d at 1225; Marbury, 957 F.2d at 839.

Under the first factor, the ALJ took into account Plaintiff's daily activities. The ALJ recognized that Plaintiff's treating physician, Rigoberto Puente-Guzman, M.D. ("Dr. Puente-Guzman"), "indicated that the claimant was capable of driving." Tr. at 19. The record supports this finding. See, e.g., Tr. at 209 (Dr. Puente-Guzman's most recent notes dated March 9, 2006 indicating Plaintiff was "independent with mobility and [activities of daily living], including driving"). The ALJ considered that Dr. Puente-Guzman found Plaintiff able to sit and stand, move from sitting to standing, and walk without difficulty, Tr. at 19, which is supported by the record. See Tr. at 209, 212, 228, 233, 239, 241, 243, 245. The ALJ also took into account Plaintiff's testimony that she could stand for thirty minutes and could walk for forty minutes,[2] Tr. at 17 (referring to Tr. at 316), and Plaintiff's testimony that she needs a cane to walk, Tr. at 17 (referring to Tr. at 313-14). The ALJ, however, discredited her

---

[2] Plaintiff actually testified that depending on what activities precede the walking and depending on what medication she is taking, she can walk "maybe 40 minutes at a time" but has to "stop" for breaks. Tr. at 316.

testimony in that regard, explaining that a cane had not been prescribed and that no indication was made by Plaintiff's treating physician "that a cane is necessary." Tr. at 19.

Plaintiff contends the ALJ's statement that Plaintiff was never given a prescription for a cane is erroneous. Pl.'s Mem. at 5. Plaintiff is correct. On September 22, 2005, Dr. Puente-Guzman gave a "prescription for a straight cane to prevent recurrent falls." Tr. at 221. As discussed below, however, the ALJ's statement does not constitute reversible error. See Reeves v. Astrue, 238 F. App'x 507, 513 (11th Cir. 2007) (unpublished) (holding that the ALJ's failure to address one of the plaintiff's alleged conditions was not erroneous because the objective medical evidence was inconsistent with the plaintiff's claim) (citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (holding that the ALJ's misstatement of a fact was harmless because it did not affect the outcome of the case)).

"To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed . . . ." Social Security Ruling ("SSR") 96-9p, 1996 WL 374185, at *7 (1996). A review of the record indicates that on September 22, 2005, Plaintiff reported to Dr. Puente-Guzman falling often. Tr. at 220-21. Plaintiff also had visible bruises on that date. Tr. at 220-21. Based on Plaintiff's self-report of falling, Dr. Puente-Guzman prescribed a cane for Plaintiff "to prevent recurrent falls." Tr. at 221. However, the record does not establish that a hand-held assistive device is "medically required." See SSR 96-9p. The objective medical evidence illustrates that Plaintiff only complained of falling on the date she was prescribed a cane. Tr. at 220-21. In fact, one month prior to the cane being prescribed, Plaintiff reported having recently walked around Wal-Mart shopping center for two hours with no incident (but reported increased pain). Tr.

at 222.  In addition, almost every note from Dr. Puente-Guzman's office for two years prior to the cane being prescribed indicates Plaintiff was ambulating without an assistive device and without issue.  Tr. at 227 (notes from July 27, 2005), 232-33 (notes from June 16, 2005), 239 (notes from May 11, 2005), 240 (notes from April 19, 2005), 242-43 (notes from March 10, 2005), 245 (notes from November 2, 2004), 254 (notes from May 21, 2004), 259 (notes from April 30, 2004), 263 (notes from January 8, 2004).  Finally, and perhaps most importantly, although Plaintiff was using a cane during the November 16, 2005 visit subsequent to Dr. Puente-Guzman prescribing a cane, Tr. at 217, Plaintiff did not use a cane for the latter visits occurring on December 16, 2005 and March 9, 2006.  Tr. at 212, 209.  Therefore, the objective medical evidence in the record reveals that a cane is not "medically required," and the ALJ's misstatement regarding a cane having been prescribed was harmless.

Under the second factor in Davis, the ALJ considered the nature, location, onset, duration, frequency, radiation, and intensity of Plaintiff's pain, as well as other symptoms, when evaluating Plaintiff's subjective complaints.  The ALJ recognized that Plaintiff suffers from "degenerative disc disease of the lumbar spine, carpal tunnel syndrome and obesity," as well as "diabetes, hypertension, and low back pain."  Tr. at 16; see also Tr. at 223, 260.  In the portion of the Decision summarizing the medical evidence and Plaintiff's testimony, the ALJ referred to the August 2002 through October 2004 notes of Plaintiff's treating physician, Dr. Puente-Guzman.[3]  Tr. at 17 (referring to Tr. at 252-75).  The ALJ recognized that in August 2002, Plaintiff "was seen after falling and experiencing abdominal pain diagnosed as

---

[3] Treatment notes from this time period also indicate Plaintiff was seen by Scott A. Wilson, M.D. ("Dr. Wilson"), Gary A. Newcomer, M.D. ("Dr. Newcomer"), and Christopher M. Leber, M.D. ("Dr. Leber"), who all apparently were practicing at Rehabilitation Medicine Associates and/or First Care of Gainesville.  See Tr. at 252-75.

-8-

abdominal strain[.]" Tr. at 17; see also Tr. at 275 (Dr. Wilson's August 30, 2002 notes indicating Plaintiff was treated for abdominal strain following a fall at work). The ALJ observed that the abdominal strain "resolved by December 2002 and [Plaintiff] was released to return to work without restriction." Tr. at 17. The ALJ correctly observed that the abdominal strain had resolved, but as far as Plaintiff's ability to work, the ALJ misstated that Plaintiff was able to return at that time without restriction. See Tr. at 269-72 (Dr. Wilson's December 13, 2002 notes indicating Plaintiff "ha[d] been working light duty, and she [felt] that she [was] ready for full duty," but imposing restrictions of "[a]void[ing] lifting over 10 lbs. [and] [a]void[ing] repetitive standing"). This misstatement, however, was harmless. See Diorio, 721 F.2d at 728.

The ALJ found as Plaintiff's "intermittent complaints" of abdominal pain diminished, "she began to complain of back pain and carpal tunnel problems." Tr. at 17; see also Tr. at 252-69. The ALJ recognized that Plaintiff's pain at the time of her alleged onset date was located in her hands, neck, back, middle and lower legs. Tr. at 17. Allegations of pain in these areas appear in September 27, 2004 treatment notes. Tr. at 251. The ALJ reviewed Plaintiff's examination report by Robert Greenberg, M.D. ("Dr. Greenberg") on July 25, 2005, which notes "continued pain in both hands, low back pain with radiation into the right lower extremity and pain in both feet." Tr. at 18; see also Tr. at 197. The ALJ considered Plaintiff's testimony that she could not work because of pain in her hands and wrist due to carpal tunnel syndrome. Tr. at 17 (referring to Tr. at 302-03). The ALJ factored in Plaintiff's testimony of the pain intensity in her wrist (a ten on a scale of ten) and back (an eight on a scale of ten). Tr. at 17 (referring to Tr. at 313). Ultimately, in discrediting Plaintiff's testimony, the ALJ relied on treating physicians' examination notations that Plaintiff had "no pain behaviors

-9-

noted[.]" Tr. at 19; see also Tr. at 263 (Dr. Wilson's January 8, 2004 notes), 261 (Dr. Puente-Guzman's April 30, 2004 notes).

Under the third <u>Davis</u> factor, the ALJ considered precipitating and aggravating factors of Plaintiff's condition. Plaintiff's fall at work in August 2002 was a precipitating factor of her abdominal strain. The ALJ recognized that this injury had been "resolved" in December 2002. Tr. at 17; see also Tr. at 269. The ALJ focused on Plaintiff's weight problem. Tr. at 18, 19; see also Tr. at 201-08 (August 1, 2005 Residual Functional Capacity Assessment by Eric C. Puestow, M.D. ("Dr. Puestow") indicating that Plaintiff's back pain from degenerative disc disease is "exacerbated by [Plaintiff's] morbid obesity").

Under the fourth <u>Davis</u> factor, the ALJ considered the side effects of Plaintiff's medication. Plaintiff testified she is taking Tramadol, Darvocet, Advil, and Flexeril. Tr. at 314. Plaintiff stated the side effects of her medications are sleepiness and difficulty with concentrating. Tr. at 308. The ALJ considered that Plaintiff finds it "difficult to study. . . due to the side effects of pain medication." Tr. at 17 (referring to Tr. at 308). Plaintiff testified she had been pursuing her GED for two years because she had only completed ten years of schooling. Tr. at 303, 308. Although not specifically discussed by the ALJ, Plaintiff testified she found it hard to concentrate on her studies because her medication makes her "sleep" when she takes it for pain. Tr. at 308. Also, Plaintiff testified she sometimes requires her daughter to drive her to appointments, "depending on the medication" Plaintiff has taken. Tr. at 308.

Also relating to possible side effects of Plaintiff's medication, the ALJ focused on the report of consultative examining physician Andres Nazario, Ph.D. ("Dr. Nazario") and on Dr. Puente-Guzman's treatment notes. The ALJ observed that "Dr. Nazario concluded that

[Plaintiff] had the ability to concentrate[,] to understand[,] and follow directions[,] and was able to interact appropriately with others." Tr. at 17-18; see also Tr. at 98 (January 18, 2005 report from Dr. Nazario). Additionally, it was observed that "Dr. Puente-Guzman stated that the claimant was independent with mobility and activities of daily living including driving," Tr. at 19; see also Tr. at 209 (March 9, 2006 treatment notes), implying that the side effects of Plaintiff's medications do not adversely affect her activities of daily living. Finally, although not discussed by the ALJ, a review of Dr. Puente-Guzman's treatment notes dated March 9, 2006 reveals he discussed possible side effects of the medications with Plaintiff, did not suspect any "aberrant drug behavior" on the part of Plaintiff, and suggested Plaintiff search for a job within a "sedentary activity status level." Tr. at 210-11.

Under the fifth Davis factor, the ALJ considered treatment or measures taken by Plaintiff for relief of symptoms. As previously discussed, the ALJ recognized that pain allegations started in August 2002 when Plaintiff sought treatment by Dr. Puente-Guzman after sustaining an injury from a fall at work, Tr. at 17; see also Tr. at 275 (August 30, 2002 treatment notes), but that the pain from that injury had resolved by December 2002. Tr. at 17; see also Tr. at 268-69 (December 13, 2002 treatment notes). The ALJ also considered Plaintiff's treatment measures for her pain complaints at the time of Plaintiff's alleged onset date. Tr. at 17 (citing Tr. at 251) (September 27, 2004 treatment notes documenting complaints of "pain in her hands, neck, back, middle and lower legs"). In October 2004, nerve conduction studies confirmed Plaintiff had carpal tunnel syndrome of "moderate severity" in both hands. Tr. at 17; see also Tr. at 247 (October 1, 2004 treatment notes).

The ALJ went on to acknowledge that Plaintiff was evaluated by Vidya S. Jain, M.D. ("Dr. Jain") for her carpal tunnel syndrome. Tr. at 17. Ultimately, on January 12, 2005,

Plaintiff underwent a successful carpal tunnel release procedure on her right hand. Tr. at 17 (citing Tr. at 129-30). On April 29, 2005, Dr. Jain discussed performing a similar procedure on Plaintiff's left hand. Tr. at 17 (citing Tr. at 124).

The ALJ also considered measures Plaintiff took for her ongoing pain symptoms, summarizing in detail the treatment Plaintiff sought from Dr. Puente-Guzman from May 2005 through March 2006. Tr. at 18-19. On May 20, 2005, Dr. Puente-Guzman performed a nerve conduction study showing "continued signs of carpal tunnel syndrome on the right of moderate severity with no significant worsening." Tr. at 18 (referring to Tr. at 237). Dr. Puente-Guzman also reported that an MRI of the lumbar spine, taken about a year earlier in May 2004, revealed "degenerative disc disease at L4-5 with bilateral facet hypertrophy." Tr. at 18 (citing Tr. at 237). On June 8, 2005, Plaintiff "successfully underwent lumbar facet joint injections." Tr. at 18 (citing Tr. at 235). At her follow up examination on June 16, 2005, Plaintiff reported "no improvements[.]" Tr. at 18; see also Tr. at 232. Dr. Puente-Guzman noted during the examination Plaintiff "exhibited no demonstrable pain behavior." Tr. at 18; see also Tr. at 233. Also, Plaintiff "moved easily from sitting to standing position and appeared to sit comfortably throughout the exam." Tr. at 18; see also Tr. at 233. Dr. Puente-Guzman observed that Plaintiff's "gait was normal," her "[s]traight leg raising was negative," and she had "no motor o[r] sensory deficits." Tr. at 18 (citing Tr. at 233).

On July 13, 2005, Plaintiff underwent a "medial branch block procedure." Tr. at 18 (citing Tr. at 230). On July 27, 2005, Dr. Puente-Guzman classified Plaintiff's work status as "full time light duty with no repetitive maneuvers with the upper extremities." Tr. at 18 (referring to Tr. at 227). Plaintiff reported no permanent relief from the medial branch block procedure. Tr. at 18 (citing Tr. at 227). Although not discussed by the ALJ, Dr. Puente-

Guzman also noted Plaintiff exhibited "no acute distress[, n]o demonstrable pain behavior," and ambulated without the use of an assistive device. Tr. at 228.

On August 17, 2005, Plaintiff received an epidural steroid injection from Dr. Puente-Guzman. Tr. at 18-19 (citing Tr. at 225) (describing need for injection because of the "underlying disk pathology at L4-L5 level"). On August 31, 2005, Plaintiff reported "no significant improvement" from the injection. Tr. at 18 (citing Tr. at 225). The ALJ pointed out that Dr. Puente-Guzman stated Plaintiff was "capable of light duty work with no repetitive maneuvers with the upper extremities." Tr. at 18-19 (citing Tr. at 222); see also Tr. at 212 (December 16, 2005 treatment notes indicating Plaintiff was capable of "full time light duty work with no repetitive maneuvers with the upper extremities"). In addition, the ALJ stated that on March 9, 2006, about four months prior to the hearing, Dr. Puente-Guzman thought Plaintiff was "independent with mobility and activities of daily living including driving." Tr. at 19 (citing Tr. at 209).

Finally, although the ALJ did not consider or discuss them, treating physician P. John Kim, M.D.'s ("Dr. Kim('s)") treatment notes reveal additional objective medical evidence supporting a finding of "not disabled" by the ALJ.[4] On January 23, 2006, Dr. Kim conducted an examination of Plaintiff. Tr. at 285. At that time, Dr. Kim noted that he explained to Plaintiff that "[he could] not find any medical justification for disability." Tr. at 285.

The ALJ considered the five factors discussed in Davis in evaluating Plaintiff's subjective testimony regarding her pain, as well as other evidence. In his Decision, the ALJ

---

[4] These treatment notes were submitted to the Appeals Council on May 11, 2007, see Tr. at 281, and were made part of the record by the Appeals Council on October 22, 2008. Tr. at 7. "[A] federal district court must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when that court reviews the Commissioner's final decision denying Social Security benefits." Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1258 (11th Cir. 2007).

-13-

gave explicit and adequate reasons for discrediting Plaintiff's subjective testimony. After evaluating the record, the ALJ found Plaintiff's testimony regarding her pain and other symptoms "less than credible" in light of the objective medical evidence. Tr. at 19. Because the ALJ gave explicit and adequate reasons and his Decision is supported by substantial evidence in the record, the ALJ did not err in discrediting Plaintiff's subjective pain testimony.

### B. Plaintiff's Ability to Work

Plaintiff contends the ALJ erred in finding Plaintiff capable of performing PRW. Pl.'s Mem. at 8-9. The ALJ determined Plaintiff could "return to her [PRW] as a custodian/housekeeper." Tr. at 19. Plaintiff argues she cannot "do custodian duties" because "[c]learly, [Plaintiff] has a need of a cane to walk and to keep herself from falling." Pl.'s Mem. at 8.

An ALJ must determine whether a claimant can perform any of her PRW based upon the claimant's RFC. See 20 C.F.R. § 404.1545(a)(5). It is within the purview of the ALJ to determine a claimant's RFC. 20 C.F.R. § 404.1546(c). The ALJ determines a claimant's RFC "based on all of the relevant medical and other evidence" contained in the record. 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). The onus is on a claimant to prove she does not have the ability to perform her PRW, either as she performed it or as it is performed in the national economy. Hubbard v. Comm'r of Soc. Sec., No. 08-16190, 2009 WL 3262024, at *1 (11th Cir. 2009) (unpublished) (citing 20 C.F.R. §§ 404.1560(b), 404.1520(f)).

Here, after reviewing the record, the ALJ determined Plaintiff has the RFC for light work. Tr. at 19. Light work is defined as "lifting no more than [twenty] pounds at a time with frequent lifting or carrying of objects weighing up to [ten] pounds." 20 C.F.R. § 404.1567(b).

According to Plaintiff's description, her job as a housekeeper "entailed lifting no greater than [ten] pounds and did not require repetitious maneuvers with her arms." Tr. at 19 (referring to Tr. at 64-65). Plaintiff's alleged inability to work is based upon her apparent "need of a cane to walk and to keep herself from falling." Pl.'s Mem. at 8. However, as previously explained, the objective medical evidence in the record does not demonstrate that a cane is "medically required." Furthermore, in determining Plaintiff's RFC, the ALJ considered Plaintiff's whether Plaintiff needs a cane to walk, but determined that she does not. Tr. at 17. As such, the ALJ did not err in determining Plaintiff has the ability to perform her PRW based on her assessed RFC.[5]

Plaintiff also contends that the ALJ should have consulted a VE to testify as to the jobs Plaintiff was capable of performing. Pl.'s Mem. at 9. At the fifth step of the evaluation process, an ALJ must determine if a claimant is capable of performing jobs that exist in significant numbers in the national economy considering her age, education, work experience, and RFC. 20 C.F.R. § 404.1520(a)(4)(v). However, if the ALJ determines at step four that a claimant "is capable of performing her past relevant work, testimony from a vocational expert [is] not necessary." Lucas v. Sullivan, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990); see also Williams v. Astrue, No. 1:07-cv-00231-MP-AK, 2009 WL 2868639, at *5 (N.D. Fla. 2009) (unpublished) (citing Gaddis v. Chater, 76 F.3d 893, 896 (8th Cir. 1996); Barrett v. Chater, 38

---

[5] The undersigned notes that the ALJ found alternatively "that even if the claimant were limited to no greater than sedentary work she would still be found not disabled under Medical-Vocational Rule 201.19." Tr. at 20. Had the ALJ determined that a cane is medically required, Plaintiff could still perform most sedentary unskilled work. "Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand." SSR 96-9P at *7.

F.3d 1019, 1024 (8th Cir. 1994)). Therefore, because the ALJ concluded that Plaintiff is capable of performing her PRW, the ALJ was not required to consult a VE.

### **V. Conclusion**

The ALJ did not err in discrediting Plaintiff's subjective pain testimony. In addition, the ALJ did not err in finding Plaintiff is capable of performing her PRW and was not required to consult the services of a VE. Finally, a review of the entire record shows the ALJ's Decision is supported by substantial evidence. In accordance with the foregoing, it is

**ORDERED:**

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's decision.

2. The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on March 22, 2010.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

wlg

Copies to:

Counsel of Record